IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KEVIN J. GRANT and DAYNA J. GRANT,

                Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

                Defendant.

OPINION AND ORDER

21-cv-055-wmc

In this civil lawsuit, spouses Kevin J. Grant and Dayna J. Grant assert claims for breach of contract, bad faith and negligence against their insurer State Farm Fire and Casualty Company based on its alleged failure to cover all the damages that plaintiffs suffered in a fire at their businesses. In addition to pursuing his joint claim with his wife in this case, plaintiff Kevin Grant is currently being prosecuted for arson, intent to defraud, and seven counts of second degree recklessly endangering safety, all arising out of the same fire. *See Wisconsin v. Grant*, No. 2021CF000597 (St. Croix Cnty. Cir. Ct. filed July 9, 2021).

Before this court now is defendant's motion for summary judgment, which is principally premised on plaintiffs' decision to invoke their rights against self-incrimination under the Fifth Amendment to the United States Constitution rather than answer questions during their respective depositions. (Dkt. #15.) Regardless of whether an adverse inference is warranted in light of plaintiffs' invocation of these rights, however, plaintiffs have failed to put forth *any* evidence in support of claims on which they have the

burden of proof. Accordingly, the court will grant defendant's motion and direct entry of judgment in its favor.

## UNDISPUTED FACTS[1]

### A. Background

On December 29, 2018, plaintiffs Kevin and Dayna Grant owned real property located at 105 River Street, Woodville, Wisconsin, which was apparently separated into three, separate businesses: a restaurant/bar, a hair salon and a dance facility. On that date, the property was insured by defendant State Farm Fire and Casualty Company. (Trucco Decl., Ex. A ("the Policy") (dkt. #18-1).)

The Policy provides coverage for both loss to the buildings ("Coverage A") *and* loss to business personal property ("Coverage B"). A declaration to the Policy also lists its coverage limits of $558,000 for Coverage A and $10,700 for Coverage B, although noting that those limits will increase with inflation. (Trucco Decl., Ex. A (dkt. #18-1) 2.)

Due to inflation, defendant represents that the coverage limits as of December 29, 2018, were $568,044 for Coverage A and $10,968 for Coverage B. In contrast, plaintiffs contend that the limit for Coverage B is ambiguous, directing the court to a "Newly Acquired Business Personal Property" provision that indicates coverage up to $100,000. (*Id.* at 4.) In reply, defendant directs the court to the following description of "Newly Acquired or Constructed Personal Property":

---

[1] Unless otherwise noted, the court finds the following facts material and undisputed as viewed in the light of plaintiffs as the nonmoving party.

> b. Business Personal Property
> If this coverage form covers Business Personal Property, you may extend that insurance to apply to Business Personal Property:
>
> (1) Including such property that you newly acquire, at any premises you acquire; or
>
> (2) Including such property that you newly acquire, located at your newly constructed or acquired buildings at the described premises.
>
> This Extension of Coverage does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

(*Id.* at 51.)

The Policy also provides coverage for "debris removal," but material to plaintiffs' claims, this provision states, "expenses will be paid only if they are reported to us in writing within 180 days of the accidental direct physical loss." (*Id.* at 47.) The Policy further provides for coverage of loss of income under various conditions, defining "Loss of Income" as "Net Income (net profit or loss before income taxes) that would have been earned or incurred if no accidental direct physical loss had occurred." (*Id.* at 18.) Finally, the Policy sets forth various duties on the part of the insured in the event of a loss, including: (1) giving prompt notice of the loss; (2) providing a description of how, when and where the loss occurred; (3) providing complete inventories of the damages property; (4) permitting inspection; (5) permitting questioning under oath; and (6) cooperating with the investigation or settlement of the claim. (*Id.* at 23-24.)

**B. The Fire**

On December 29, 2018, the Grants' property sustained damage from fire. The responding firefighters reported that: the doors to the building were locked; they had to force entry into the building; and there was a smell of gasoline in the building. The Grants then submitted a claim to State Farm for loss due to fire. In turn, State Farm retained Whitemore Fire Consultants, Inc., to investigate the fire. As part of the investigation, Whitemore collected evidence samples from the building. Armstrong Forensic Laboratory, Inc., tested the samples for ignitable liquids, issuing a report on January 14, 2019, detailing its findings of gasoline in the samples. On January 18, 2019, State Farm also took recorded statements of Kevin and Dayna Grant.

Due to the suspicious circumstances surrounding the fire's origin, State Farm issued a "Reservation of Rights" letter dated January 29, 2019, explaining that "[t]here is a question as to whether [it] is obligated to indemnify" the Grants because:

> It is questionable whether there was an accidental direct physical loss
>
> It is questionable whether you or any person insured under this policy caused or procured a loss to property under this policy for the purpose of obtaining insurance benefits
>
> It is questionable whether you or any other insured has concealed or misrepresented any fact or circumstance relating to this insurance, whether before or after loss

(Trucco Decl., Ex. D (dkt. #18-4) 1.)[2] State Farm also purported to reserve its rights to assert a policy defense while continuing its investigation. Finally, State Farm sent the

---

[2] State Farm sent the Grants another letter dated March 7, 2019, requesting completion of a personal property inventory form, and again reserving all rights and defenses. (Trucco Decl., Ex. F (dkt. #18-6).)

4

Grants a letter dated January 28, 2019, which detailed their duties under the Policy and requested various documents. (*Id.*, Ex. E (dkt. #18-5).)

On May 28, 2019, State Farm sent a letter to the Grants following up on the documents it previously requested and advising them that State Farm would be scheduling their examinations under oath. (*Id.*, Ex. G (dkt. #18-7).) On May 29, 2019, State Farm also paid the Grants $2,500, the policy limit for a Fire Department Service Charge.

By February 13, 2020, the Grants had not yet submitted to examinations under oath. Based on this apparent refusal, State Farm sent the Grants another letter questioning whether their refusal to sit for an examination violated their duties in the event of a loss under the terms of the Policy. (*Id.*, Ex. I (dkt. #18-9).) The Grants then submitted to examinations under oath on March 18, 2020.

On August 26, 2020, State Farm notified the Grants that they had requested their credit report in continuation of its investigation. (*Id.*, Ex. J (dkt. #18-10).) On September 8, 2020, State Farm also requested additional information, following up with another letter on September 14, 2020, again seeking documents previously requested but not yet received. (*Id.*, Exs. K, L (dkt. ##18-11, 18-12).)

On October 2, 2020, State Farm paid the Grants the policy limit of $586,044 under Coverage A for loss to buildings. On October 8, 2020, State Farm paid the Grants $390.67 for loss of income for twelve months, and on November 5, 2020, State Farm paid the Grants $14,792.03 under Coverage B for loss of business property.

## C. This Lawsuit

Plaintiffs commenced this action on December 23, 2020, asserting causes of action

for (1) breach of contract, (2) bad faith, and (3) negligence. The negligence claim is premised on a theory that defendant had a duty to disclose changes to coverage limits adopted in the summer of 2018, a time when Kevin Grant was allegedly shopping around for other insurance policies.

On October 13, 2021, counsel for State Farm took the deposition of Kevin Grant. During the deposition he involved his Fifth Amendment privilege against self-incrimination 130 times. On October 18, 2021, counsel for State Farm took the deposition of Dayna Grant, in which she invoked her Fifth Amendment privilege against self-incrimination 125 times. Specifically, the Grants invoked their rights and refused to answer all questions concerning:

- the current condition of the property, whether any demolition had been done, whether any debris had been removed, and whether the Grants incurred $179,000 in costs for debris removal;

- how the alleged loss of income was calculated and if they had any documents supporting loss of income related to the fire;

- if Dayna had lost $28,700 in income since the fire, if the loss of income was due to the fire, and how this number was calculated; and

- whether they had incurred $8,200 for the cost of renting an alternative facility, and if so, when and to whom this payment was made.

(Def.'s PFOFs (dkt. #19) ¶¶ 38-46.)

In response to defendant's motion for summary judgment, plaintiffs similarly submitted *no* supporting declarations or any other admissible evidence in support of their claims. Instead, plaintiffs attached to their opposition brief a one-page, unauthenticated, hand-written, undated and unsigned document, which purports to detail an agreement

6

with "Angie" for rental of "kitchen space & appliances" for $500.00 a month. (Pl.'s Opp'n, Ex. A (dkt. #22-1).)

As far as the court can discern from their accompanying brief, plaintiffs now contend that defendant breached the insurance policy and acted in bad faith by: (1) limiting its payment of damage for personal property from the businesses to the $14,792.03 payment or approximately $4,000 more than the original policy limit, which plaintiffs claim should instead be subject to the $100,000 coverage limit for Newly Acquired Business Personal Property; (2) failing to cover debris removal based on what plaintiffs argue is an erroneous interpretation of the Policy that would require the submission of expenses within 180 days of the covered loss; and (3) undervaluing the loss of income based on plaintiffs' planned lease of the kitchen area for $500 per month and "determination" that their actual loss of income was $28,700.

## OPINION

### I. Breach of Contract

In its motion for summary judgment, defendant asks the court to draw an adverse inference from plaintiffs' invocation of the privilege against self-incrimination, directing the court to *In re Moreno*, 414 B.R. 485 (Bankr. W.D. Wis. 2009). In that case, the bankruptcy court held that "[i]n a civil case," it may "draw adverse inferences from a defendant's invocation of the privilege against self-incrimination." *Id*. at 490–91 (citing *National Acceptance Co. of America v. Bathalter (In re Bathalter)*, 705 F.2d 924, 930 (7th Cir. 1983)). Of course, as defendant acknowledges, here, it is the *plaintiffs* that are invoking the privilege.

Regardless, while plaintiffs' invocation of the privilege with respect to any questions about the cause of the fire could certainly be relevant to the criminal prosecution, it is not at all clear why questions about debris removal, loss of income and costs incurred in seeking alternative premises would implicate the criminal charges against Kevin Grant, or at least plaintiffs have failed to provide such an explanation. *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002) ("To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have *some* tendency to subject the person being asked the question to criminal liability."). Moreover, from the court's review of the deposition transcripts, plaintiffs come perilously close to a blanket invocation of the privilege, warranting dismissal of this case. *See Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980) (affirming district court's finding of contempt based on a party's invocation of blanket privilege, explaining that "whether the privilege is properly invoked is one for the judge").

More importantly, whether or not plaintiffs abused their Fifth Amendment privilege, plaintiffs bore the burden as the nonmoving party with the ultimate burden of proof on each of their claims and deliberately chose not to put forth sufficient evidence at summary judgment from which a reasonable jury could find in their favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

8

trial."). Summary judgment is frequently referred to as the "proverbial put up or shut up" phase of a case, "when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (internal citation and quotation marks omitted). Thus, plaintiffs have utterly failed to meet their burden with respect to the three cursory categories of damages plaintiffs contend defendant failed to cover.[3]

*First*, as detailed above, plaintiffs would take issue with defendant's decision to only pay $14,000 under Coverage B for loss of business personal property. However, plaintiffs provide *no* evidence that they incurred any damages exceeding that amount. Accordingly, the court must deny this basis for asserting a breach of contract for that reason alone. Regardless, as noted, plaintiffs' *only* argument that defendant breached some obligation to pay above the $10,000 policy limit under Coverage B is based on a reference to the $100,000 limit for "Newly Acquired Business Personal Property." Having failed to detail any of these losses, much less provide supporting evidence of loss, there is no way for the court to determine whether the claimed damages would even arguably fall within the definition of "newly acquired" property. Indeed, other than pointing to the Policy provision itself, plaintiffs fail to offer any explanation for how these unknown and undocumented expenses would fall within that category.

---

[3] While in their opposition brief, plaintiffs acknowledge the standard for summary judgment under Rule 56, they also attempt to rely on Wisconsin state court cases to argue that "[s]ummary judgment is not meant to be a short cut at the expense of a fair trial to obtain quick relief, neither is it an absolute right." (Pls.' Opp'n (dkt. #22) 4 (citing *Grognet v. Fox Valley Trucking Serv.*, 45 Wis. 2d 235, 240, 172 N.W.2d 812, 815 (1969)).) Fair enough, but plaintiffs still must provide some evidence in support of their claims to warrant the time and expense of a jury trial, and they chose not to do so in this case.

*Second*, plaintiffs seek recovery for "debris removal."  Here, too, plaintiffs offer *no* evidence of any expenses incurred for debris removal; rather, they specifically refused to answer questions about these expenses during their depositions.  Moreover, the court agrees with defendant that the Policy unambiguously requires plaintiffs to submit expenses -- not just notify State Farm of a general request for coverage -- within 180 days of the coverage loss.  (Policy (dkt. #18-1) 47 ("[E]xpenses will be paid only if they are reported to us in writing within 180 days of the accidental direct physical loss.").)  *See also Boehm v. Scheels All Sports, Inc.*, 202 F. Supp. 3d 1030, 1033 (W.D. Wis. 2016) ("The interpretation of the insurance contract is a question of law.") (citing *Phillips v. Parmelee*, 2013 WI 105, ¶ 11, 351 Wis. 2d 758, 840 N.W.2d 713).  Since plaintiffs did concede that they failed to submit any debris removal expenses, and certainly failed to submit them within the time limit provided under the Policy, their claimed breach on this basis is also doomed.

*Third*, with respect to loss of income, plaintiffs also failed to submit any evidence of lost income beyond the $390.67 already reimbursed by defendant.  Specifically, plaintiffs sole "proof" of an additional loss is an inadmissible, unauthenticated document purporting to be a lease for $500 per month of kitchen space on the property beginning at some unknown time and for an unspecified period into the future.  While plaintiffs attempt to claim loss of income of more than $20,000, they provide no evidence of such a loss, nor were they willing to answer questions describing the loss.  For all these reasons, plaintiffs have wholly failed to produce any evidence to support a jury finding of a breach of contract, and the court will grant summary judgment to defendant on this claim.

## II. Bad Faith

The court's grant of summary judgment to defendant on plaintiffs' breach of contract claim necessarily dooms their bad faith claim as well under Wisconsin law. *See Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 5, 334 Wis. 2d 23, 798 N.W.2d 467 ("Some breach of contract is a fundamental prerequisite for a first-party bad faith claim against an insurer."). Even if this claim did not fail for a lack of a breach of the insurance policy, plaintiff also failed to put forth evidence from which a reasonable jury could find that State Farm lacked "a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Brethorst*, 2011 WI 41, at ¶ 26. If anything, given defendant's extensive communications about its effort to investigate the cause of the fire and extent of covered damage, plaintiffs' lack of diligence in responding to document and examination requests, not to mention their continued unwillingness to provide any explanation or documentation of their additional claims for coverage, the plaintiffs are the ones who acted in bad faith.

## III. Negligence

This leaves only plaintiffs' claim that defendant had some obligation to inform them of a change in the policy limit for Coverage B. As an initial matter, plaintiffs again offer *no* evidence of a policy limit change. All we have is plaintiffs' response to defendant's interrogatory no. 4, which states, "My original State Farm policy contained $150,000 coverage for personal property damage." (Weber Decl., Ex. 6 (dkt. #17-6) 3.) There is no factual dispute, however, that the Policy provision material to plaintiffs' loss contained a $10,000 limit. Rather, there is merely an argument by plaintiffs that the "Newly Acquired

11

Business Personal Property" provision provided additional coverage.

Putting that aside, the elements of a negligence claim under Wisconsin law are well established as:

> (1) a duty of care or a voluntary assumption of a duty on the part of the defendant; (2) a breach of the duty (which involves a failure to exercise ordinary care in making a representation or in ascertaining the facts); (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury.

*Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 319, 401 N.W.2d 816, 822 (1987).

Here, the parties principally dispute whether State Farm had any duty to disclose a change in the policy limit. While plaintiffs attempt to craft a duty based on (1) application of the doctrine of *respondent superior* premised on the possible duty of an insurance agent and (2) a statute that sets forth certain notice requirements, the court need not reach either argument, however, because plaintiffs have once again failed to put forth any evidence supporting a finding that they were *injured* as a result of defendant's supposed negligence, much less suffered any covered damages. As explained above, plaintiffs repeatedly chose not to produce any evidence that their loss of business personal property exceeded the $14,000 paid by defendant, both in discovery and at summary judgement. As such, the court must also grant defendant summary judgment on this claim.

ORDER

IT IS ORDERED that:

1) Defendant State Farm Fire and Casualty Company's motion for summary judgment (dkt. #15) is GRANTED.

2) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 16th day of March, 2022.

                              BY THE COURT:

                              /s/
                              _____
                              WILLIAM M. CONLEY
                              District Judge